| | |
|---|---|
| VINSON S. HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| DUANE TERRELL, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court upon Defendants Terrell, Faircloth, and Corpening's Motion for Judgment on the Pleadings, (Doc. No. 17), and Plaintiff's Motion for Summary Judgment, (Doc. No. 22).

**I.    BACKGROUND**

   A.    Procedural Background

Plaintiff Vinson S. Hill ("Plaintiff"), a prisoner incarcerated in the North Carolina Department of Correction, filed this pro se action on January 28, 2011.  Plaintiff alleges that his First Amendment communication rights were violated at Marion Correctional Institution ("Marion Correctional").  Plaintiff contends that his mail was illegally censored and that he was denied access to the Courts due to such censorship.  Plaintiff names as Defendants the North Carolina Department of Correction ("DOC"), Duane Terrell ("Terrell"), Sergeant W. Corn ("Corn"), Captain Corpening ("Corpening"), and Lt. Marcella Faircloth ("Fairlcoth"), all of whom are employees at Marion Correctional.  Terrell is the Assistant Superintendent, Corpening is a Correctional Captain and Faircloth is a Correctional Lieutenant.  Plaintiff seeks injunctive and declaratory relief, as well as monetary damages against all of the named defendants.

By Order dated March 25, 2011, this Court dismissed Defendants DOC and Corn from this action. (Doc. No. 7). On April 4, 2011, process was served on Defendants Terrell, Corpening, and Faircloth.

B.	Factual Background

On December 14, 2009, Victoria Hill ("Hill") contacted prison officials to inform them that she had received a card from Plaintiff, (Doc. No. 16-5 at 1: Letter from Plaintiff), and to request that Plaintiff not contact her again. See (Doc. No. 16-5 at 2: Letter from Hill). On December 15, 2009, Terrell informed Plaintiff that he must not contact Ms. Hill again. (Doc. No. 16-5 at 3: 12/15/09 Letter from Terrell). Terrell also informed Plaintiff that his incoming and outgoing mail would be censored. (Id.). Plaintiff did not attempt to contact Hill again and on May 21, 2010, Faircloth recommended via memorandum to Terrell that Plaintiff be removed from the mail censorship list. (Doc. No. 16-5 at 4: Memo from Faircloth). Such recommendation was approved on the same day. (Id.).

On August 4, 2010, Plaintiff wrote a letter to Katie Linamen ("Linamen"), a woman whose photograph he saw in the newspaper. See (Doc. No. 16-3 at 3-4: Letter to Linamen). On August 23, 2010, Linamen requested that Plaintiff not contact her again. On August 24, 2010, Terell informed Plaintiff that, per Linamen's request, Plaintiff must not contact her again. (Doc. No. 16-3 at 2: 8/24/10 Letter from Terrell). In the same letter, Terell informed Plaintiff that his incoming and outgoing mail would be censored. (Id.). Plaintiff signed the letter, acknowledging receipt. See (Id.). On the same day, Plaintiff filed a grievance, asking for how long his mail would be censored, and challenging the inspection of his legal mail. (Doc. No. 1 at 10: Grievance). Terell responded to Plaintiff's grievance, indicating that his legal mail would only be inspected for contraband as per prison policy. (Id.).

On August 25, 2010, Plaintiff filed another grievance complaining that his mail was being censored. (Doc. No. 1 at 20: 8/25/10 Grievance). Plaintiff stated that Faircloth told him that if he cursed in his outgoing mail, he would be written up. (Id.). Plaintiff complained that one of his letters was returned to the prison and subsequently confiscated and stated "I told them they were violating my rights and was told I don't have [any] cause I'm in prison." (Id.). As a remedy, Plaintiff asked prison officials to stop censoring his outgoing personal and legal mail, and to allow him to seal the same. (Id.).

On September 21, 2010, Plaintiff filed another grievance, asking for how long he needed to leave his mail open for inspection. (Doc. No. 1 at 12). Terrell responded on October 7, 2010 that once Plaintiff ceased contacting members of the public whom he did not know "for a reasonable period of time, [she] will lift the censorship." (Id.). On October 4, 2010, Plaintiff filed another grievance asking again for how long his mail would be censored. (Doc. No. 1 at 14). He received a response on October 5, 2010, indicating that his censorship was indefinite and that he could write to the superintendent to request removal at any time. (Id.). On October 25, 2010, Plaintiff filed a grievance after his letter(s) were mistakenly sent to the wrong person(s). (Doc. No. 1 at 16). Plaintiff received a response on October 26, 2010 indicating that if he wished to complain about his letters being put in the wrong envelopes, he should write to Special Affairs. (Id.).

On February 2, 2011, Terrell sent Plaintiff a letter informing him that all of his legal mail would be inspected for contraband. (Doc. No. 16-3 at 5: 2/2/11 Letter from Terrell). On February 8, 2011, Plaintiff filed a grievance indicating that the mailroom placed him on censorship and he wants to be taken off. (Doc. No. 16-1 at 3: 2/8/11 Grievance). On February 21, 2011 and March 10, 2011, Plaintiff received responses to his grievance and appeal. (Id. at 2,

3

4: Grievance Responses). The prison superintendent summarized:

> You were placed on mail censorship on 12/15/09 after Victoria Hill requested that you not contact or attempt to communicate with her anymore. You were taken off censorship on 5/21/10. You were placed back on censorship after you wrote another citizen at work and she stated that she felt threatened by you randomly writing to her. On 2/2/11 you received a letter notification instructing you that you were on censorship and were to submit mail unopened for review. You have been advised t hat you will remain on this list at least six months. At that time, the matter will be reviewed and a decision made concerning continuation of mail censorship or removing you from the list.

(Id. at 2: 3/10/11 Grievance Response). Plaintiff appealed the decision. (Id.). On March 30, 2011, Faircloth sent Plaintiff a letter informing him that he had been removed from the mail censorship list on March 21, 2011. (Doc. No. 16-3 at 6: Letter from Faircloth). On April 5, 2011, the grievance examiner found that Marion Correctional staff had adequately addressed Plaintiff's concerns. (Doc. No. 16-1 at 1: Step Three Response).

Plaintiff alleges that censoring his legal mail is illegal. Plaintiff contends that prison officials confiscate any mail which, in the their opinion, has rude language or is critical of staff at Marion Correctional. Plaintiff states there is no security purpose in censoring his outgoing mail and that he cannot communicate adequately, safely, or confidentially with his attorneys or the Court. Plaintiff also alleges he fears retaliation for the filing of this lawsuit.

## II.     LEGAL STANDARD

"On a motion for judgment on the pleadings made pursuant to Rule 12(c), only the pleadings are considered." A.S. Abell Co. v. Balt Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964). The court "appl[ies] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002) (citations omitted). "To survive a Rule 12(b)(6) motion, a complaint's 'factual allegations must be enough to raise a right to relief above the speculative

4

level' and have 'enough facts to state a claim to relief that is plausible on its face.'" Demetry v. Lasko Prod. Inc., 284 F. App'x 14, 15 (4th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-57 (2007)).

A Rule 12(c) motion should only be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Ca. Co., 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). When the court considers a motion for judgment on the pleadings, it should "construe the facts and reasonable inferences . . . in the light most favorable to the [non-moving party]." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To that end, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." John S. Clark. Co., Inc. v. United Nat'l Ins. Co., 304 F. Supp. 2d 758, 763 (M.D.N.C. 2004) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1368 at 520 (2d ed. 1990)). Ultimately, "a [movant] may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff." BET Plant Svcs., Inc. v. W.D. Robinson Elec. Co., Inc., 941 F. Supp. 54, 55 (D.S.C. 1996).

### III. DISCUSSION

"[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." Bell v. Wolfish, 441 U.S. 520, 545 (1979). "The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities . . . " Hudson v. Palmer, 468 U.S. 517, 524 (1984) (citation omitted).

5

Defendants contend that their censorship of Plaintiff's mail was consistent with legitimate prison policy and thus did not violate Plaintiff's First Amendment rights. In support of their argument, Defendants cite several sections of the DOC Policies and Procedures, a copy of which they attach to their Answer.[1] (Doc. No. 16-4). Pursuant to DOC Policies and Procedures, Chapter D, § .0309(a)(2), "[a]n inmate's privilege to write to a particular person or persons may be withdrawn . . . upon request of the recipient . . . Writing privileges also may be terminated for any reasons stated in [the censorship section] of this policy. The reason for withdrawal must be stated in a written notice to the inmate that should refer specifically to the letters previously returned." (Doc. No. 16-4 at 3). Victoria Hill and Katie Linamen each informed prison officials that they did not wish to receive further correspondence from Plaintiff. (Doc. No. 16-1 at 4).

The Supreme Court has held that restrictions on outgoing inmate mail must be generally necessary to protect a legitimate government interest. See Procunier v. Martinez, 416 U.S. 396, 414 (1974), overruled in part by Thornburgh v. Abbott, 490 U.S. 401, 411-14 (1989) (limiting Procunier to outgoing mail). "The North Carolina Department of Correction (DOC) has a legitimate penological interest in protecting the public from harassment by inmates by prohibiting an inmate from sending letters to persons who have indicated in writing that they do not wish to receive mail from a particular inmate." Tompkins v. Dep't of Corr., No. 1:08-cv-322-01-MU, 2009 WL 995573, at *1 (W.D.N.C. Apr. 14, 2009) (Mullen, J.); see also Berdella v. Delo, 972 F.2d 204, 209 (8th Cir. 1992) (policy of prohibiting inmate from sending mail to persons who have indicated in writing that they do not wish to receive mail from a particular

---

[1] It appears that Defendants may have been citing to a different version of the DOC Policies, however, as none of their cites match their purported assertions.

6

inmate is generally necessary to serve the government's interest in protecting the public from harassment by inmates); Jones v. Diamond, 594 F.2d 997, 1014 (5th Cir. 1979) (validating the use of negative mail lists and stating "jail officials may employ a 'negative mail list' to eliminate any prisoner correspondence with those on the outside who affirmatively indicate that they do not wish to receive correspondence from a particular prisoner"). Based upon the above, this Court concludes that Defendants did not violate Plaintiff's constitutional rights when they followed prison policy and prohibited Plaintiff from communicating with individuals who had requested that they not receive letters from Plaintiff.

     Plaintiff alleges that the censorship of his legal mail prevented him from communicating adequately, safely, or confidentially with his attorneys or the Court. See (Doc. No. 1 at 4). However, while Plaintiff complains that his legal mail should not be subject to censorship, he does not allege any specific instances where his legal mail was actually censored. See (Doc. No. 1). Moreover, Plaintiff fails to allege any actual injury resulting from any legal mail censorship. To sustain a claim of denial of access to the courts, a prisoner must show that his efforts to pursue a legal claim were hindered. O'Dell v. Netherland, 112 F.3d 773, 776 (4th Cir. 1997) ("a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'") (quoting Lewis v. Casey, 518 U.S. 343, 356 (1996)); see also Long v. Harkelroad, No. 1:02-cv-254-MU-02, 2006 WL 572690, at *3-4 (W.D.N.C. Mar. 8, 2006) (Mullen, J.) ("[I]n order for the plaintiff to prevail on his claim of denied access to the courts - even assuming an unlawful confiscation - the plaintiff still must demonstrate that he suffered actual injury, i.e., that his efforts to pursue a legal claim were hindered."). Therefore, the Court finds that Plaintiff has failed to allege a claim that his access

7

Case 1:11-cv-00018-RJC   Document 26   Filed 03/02/12   Page 7 of 8

to the courts was unconstitutionally burdened.

The Court finds that Plaintiff's personal mail was censored in furtherance of DOC's legitimate penological interest in protecting the public from harassment by inmates. The Court further finds that Plaintiff has failed to allege any facts showing that his legal mail was censored, or that such censorship cause him any actual injury. For these reasons, Defendants' Motion for Judgment on the Pleadings is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and this action is dismissed with prejudice.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants Terrell, Faircloth, and Corpening's Motion for Judgment on the Pleadings, (Doc. No. 17), is **GRANTED**; and

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 22), is **DENIED**.

Signed: March 2, 2012

Robert J. Conrad, Jr.
Chief United States District Judge